IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| GERALD EWING | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. 1:12-cv-00060-C |
| | § | |
| DAVID OHRE, LARRY SANDERS, | § | |
| and EXCEPTIONAL BRANDS, LLC, | § | Jury Trial Demanded |
| d/b/a BUFFALO WILD WINGS, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS
## WITH BRIEF IN SUPPORT

David Ohre, Larry Sanders, and Exceptional Brands, LLC, Defendants, hereby move for sanctions pursuant to Rule 11, Federal Rules of Civil Procedure ("FRCP"), against Gerald Ewing and/or his counsel, Evan Stone, for filing Plaintiff's First Amended Complaint, showing:

1.  The Plaintiff's First Amended Complaint ("FAC") is being presented for an improper purpose, such as to harass or needlessly increase the cost of litigation. FRCP 11(b)(1).

2.  The claims and other legal contentions advanced by the FAC as described below are not warranted by existing law, nor warranted by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law. FRCP 11(b)(2).

3.  More particularly, Plaintiff did not obtain registration of a copyright of the photograph taken by Ewing which is the subject of this suit ("Photo") prior to the preparation of the mural pursuant to commission by Defendants which is allegedly infringing ("Mural"). Thus, Plaintiff is not entitled to recover statutory damages or attorney's fees. 17 U.S.C. § 412; *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143-44 (5th Cir. 1992). On May 4, 2012, Counsel for Defendants pointed out this defect in the original Complaint via letter to Plaintiff's counsel,

including attaching a copy of the statute and the *Mason* case by the Fifth Circuit. Nevertheless, Plaintiff persisted in re-alleging claims for both statutory damages and attorney's fees in the FAC. This is clearly unwarranted and frivolous, and it is harassing and needlessly increasing the cost of litigation, undoubtedly for the purpose of coercing a nuisance-value settlement.

4. In addition, Plaintiff's case is unfounded substantively, as has been pointed out to Plaintiff or his counsel in the Defendants' First Amended Answer ("FAA"). This is not the first time Plaintiff has made allegations of misconduct with respect to the use of the very Photo in question in a transformative fashion in the Mural displayed by Defendants in the Buffalo Wild Wings ("BWW") restaurant. Previously Plaintiff made claims to Abilene Christian University ("ACU") concerning this subject. This resulted in ACU filing a declaratory judgment action against Plaintiff, pleading noninfringement. In response, Plaintiff filed a counterclaim alleging state-law causes of action. ACU pointed out in that lawsuit that it had an implied, nonexclusive license to use the Photo in any fashion that it chose. This is in keeping with the standard practice of ACU with respect to all photographs which it commissions as to events at ACU, including sporting events. Plaintiff took the commissioned Photo at an ACU football game and provided the Photo to ACU, again in accord with that "standard operating procedure."

5. Despite being so advised by ACU[1], and on the heels of having his counterclaim against ACU dismissed, Plaintiff took the tack of now suing Defendants with virtually the same allegations of fact, only now couched under the Copyright Act. Apparently as of yet no registration has been obtained, though it must have been applied for. Of course, the case against Defendants is no more warranted than Plaintiff's dismissed claims against ACU. It is simply Plaintiff's effort at a "second bite of the apple."

---

[1] The suit was resolved without obtaining any judicial ruling on the point because the counterclaim was dismissed as being preempted by the Copyright Act. Consequently, ACU had no reason to seek such a determination. Nevertheless, it is clear that Plaintiff was advised of the underlying facts and law in the ACU litigation.

6.  Particularly, should the FAC not be withdrawn and the case accordingly dismissed, the evidence will show ACU had and has an unrestricted, nonexclusive implied license to the copyright in the Photo of ACU football star Johnny Knox. ACU requested that Ewing take photographs of certain ACU sporting events. One such photograph taken by Ewing pursuant to this ongoing independent-contractor, free-lance relationship ("Relationship") was the Photo. ACU paid Ewing for taking the Photo. Ewing delivered the Photo to ACU via a storage device, as he customarily did with respect to other photographs taken by ACU pursuant to the Relationship. Ewing intended that ACU copy and distribute the Photo, and understood that ACU was free to use the Photo how it wished. In fact, it was and is the customary and usual, if not universal, understanding between ACU and persons commissioned and paid to photograph university events that ACU has unrestricted rights to use the photographs. This is the custom and practice of the industry, and of ACU, and free-lance photographers for ACU, in particular. Presumably Ewing was aware of and similarly consented to this arrangement and Relationship as well. This right of use of the Photo, and any other such photographs, included, without limitation, third-party use on behalf of ACU for marketing and publicity with ACU's permission.

7.  Pursuant to such rights, ACU allowed Defendants to use the Photo in connection with creation of a Mural within the scope of ACU's implied license, including for purposes of marketing and publicity favorable to ACU. In that ACU had the implied license right to provide the Photo for such marketing and publicity purposes (among others), Defendants cannot be held liable to Ewing for accepting the Photo and using it for the Mural, to which ACU specifically agreed and consented. In fact ACU actively participated in selecting and providing the Photo for this purpose, including particularly for ACU publicity purposes. ACU did not receive any monetary compensation for use of the Photo—just publicity and marketing benefits.

8. The facts as to Defendants obtaining and using the Photo are as follows:

(a) Larry Sanders was the individual who worked with ACU with respect to what would ultimately become the use of the Photo transformationally to create the Mural. The initial goal was to create sports murals to be used in the redecoration of the Abilene (Ridgemont Drive) BWW restaurant. The intent was to make the Abilene BWW store unique and community specific via the display of celebrated local high school and university sports.

(b) The graphics company commissioned for producing and mounting the murals had been introduced to the management of Wingsport, LP, at a BWW national conference. Mr. Sanders' initial contact with ACU pursuant to this project was with Ron Hadfield at ACU and was simply to acquire authorization for Defendants' graphic professionals to incorporate the ACU registered logo and the school's colors on "generic" sports action figures to create a timeless "feel" of local sports for BWW guests.

(c) There was an immediate concern by Mr. Hadfield that this might not be the best way to depict ACU athletics, and several discussions ensued that resulted in agreement that actual images would best serve both ACU's interests and BWW's interests. Having decided to utilize images from the Universities instead of "created" or "virtual" athletes, Mr. Sanders started the process of obtaining a university image selection from ACU.

(d) Defendants had already selected a football action shot representing Hardin Simmons University, and a woman's volleyball action shot for McMurry University. Mr. Sanders was seriously considering a woman's track photo for ACU; however, the prospect of celebrating the success of ACU football "graduates" in the National Football League made the transition to that sport desirable. Having three Jonny Knox photos to select from, the image Mr. Sanders chose was composed with the action moving into the frame from the right and worked

well with the other two images already placed on the Mural layout.  Mr. Sanders made the choice based entirely on composition compatibility with the Mural.  Composition determined the choice. If the composition had been different in any way, one of the other images would have been selected.  And Mr. Sanders did not know who shot the photographs.  They were all ACU photographs, presented from ACU, and Mr. Hadfield had authorized Defendants' utilization of any of them.

(e)     The images supplied to Mr. Sanders by Abilene Christian University were devoid of any copyright claim, © mark, photo credit, or any reference to authorship, nor was there ever any implication of such.  Further, there were none of these industry standards imbedded in the digital image.  Had copyright been intended by the owner, or even inferred, the use of the image would have been discussed in copious detail and legal contracts drawn to determine specifications, conditions, or limitations of the image's utility.

(f)     After the choice was made and the image sent to the mural graphics team, a digital proof was sent to Defendants for approval.  Per Mr. Sanders' agreement with ACU's Mr. Hadfield, that proof was sent via e-mail to ACU so Mr. Hadfield would be apprised of the exact nature of the image's use on the mural.  ACU therefore knew exactly what image was selected, exactly how it was being used, and exactly how much ACU would receive for the image's utility, which was simply the positive recognition by the public and a place of high visibility inside Abilene's most popular sports restaurant.

(g)     Because a transformative use of this Photo into the shape and form of the Mural, particularly including other area collegiate sports stars as a commentary on area sports and provision of publicity for the area colleges, fit with the space and intended use of a photograph of an ACU athlete in the Mural, Defendants chose to use the Photo.  Defendants understood and

understand ACU to have and have had the right to provide the Photo for just such purposes, including for publicity and marketing. At no time did Mr. Sanders or any other Defendant have any other understanding about the picture other than that they were receiving the Photo as duly authorized by ACU to provide the Photo, and that ACU had the right to make that authorization. In fact, at that time no Defendants even knew the Photo was taken by Ewing. They further did not know Plaintiff allegedly held any claim to the Photo.

9. Defendants have affirmatively pled implied license and transformational fair use of the Photo in creation of the Mural consistent with the true facts of this case as set out above.

10. Defendants' First Amended Answer ("FAA") pointed out all these matters on May 22, 2012. Then counsel for Defendants sent an email on May 24, 2012, to counsel for Plaintiff pointing out, again, the invalidity of the claim for statutory damages and attorney's fees. Nonetheless, Plaintiff has still not dismissed those claims. Instead, Plaintiff has realleged them in the FAC despite the earlier notice of their patent unavailability and invalidity.

11. In addition to the statutory damages and attorney's fees bar, in that email counsel for Defendants further pointed out that, in accordance with the FAA pleading, as follows:

> In particular, ACU had an implied license to use the photograph in any fashion that it chose, and in particular for marketing and publicity. The transformative use of the photograph in the mural clearly comes within the scope of that license, which gave publicity to ACU through a star athlete being recognized at a fine community restaurant with a sports theme. *See generally Lulirama Ltd., Inc. v. Axcess Broadcast Services, Inc.*, 128 F.3d 872 (5th Cir. 1997), as to the implied license. *See also Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) as to transformative fair use, another applicable defense.

As yet, Defendants have received no response from counsel for Plaintiff to the May 24 email to address the important matters raised therein.

12. Based on the facts recited above, the Fifth Circuit's *Lulirama* case establishes that ACU had an implied license to provide the Photo for use by Defendants in the Mural, which

operated to publicize and market ACU's sports program. This is dispositive of Plaintiff's case *in toto*, without regard to the clear bar of the statutory damages and attorney's fees already recited.

13. Defendants also believe the Plaintiff's case to be infirm based on transformative fair use under the *Blanch* case. However, the critical considerations as to the present motion are (a) the absolute statutory (and Fifth Circuit) bar as to statutory damages and attorney's fees, and (b) the implied license bar to the copyright cause of action, also under Fifth Circuit precedent.

14. Plaintiff has alleged a *revocation* of the license. However, Plaintiff could not and cannot revoke the implied license because he *received consideration* for it. *Lulirama*, *supra*, 128 F.3d at 882; *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451-52 (5th Cir. 2003). Again, this is well-established Fifth Circuit precedent. Therefore, this allegation of "revocation" is frivolous as well and should be withdrawn; or, if not, then sanctions should be awarded.

15. Defendants therefore request sanctions under FRCP 11(c)(4), including dismissal of the case and "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id*. This is particularly appropriate because Defendants gave immediate notice of the defects and violations at the very outset of the case and therefore have minimized the fees which they request be awarded; *i.e.*, Defendants have mitigated the harm caused by the Rule 11 violations.

16. In *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 363 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d Cir. 2007), the Court awarded attorneys' fees for the inclusion of a clearly barred statutory damages claim and a refusal to withdraw it:

### 1. *Inclusion of Statutory Damages Claim*

In the Complaint, Weingrad included a claim for statutory damages under the Copyright Act in an amount of "not less than one hundred fifty thousands [sic] dollars ($150,000)." ... The inclusion of such a claim was improper, unreasonable, and vexatious in light of the fact that (a) this type of claim was precluded by the

> plain language of the Copyright Act.
>
> The plain language of section 412 of the Copyright Act precludes a prevailing plaintiff from seeking the statutory damages and attorney's fees for infringement of a published work if infringement of the work commenced after first publication and before registration. 17 U.S.C. § 412(2). ***

Not only was the initial pleading of statutory damages sanctionable; the refusal to withdraw the pleading upon being notified of the deficiency exacerbated the violation. *Id.*. 431 F. Supp. 2d at 364 ("Weingrad's actions in delaying the dismissal of this facially invalid claim were so lacking in merit as to amount to bad faith and vexatiously multiplied the proceedings"). Exactly the same is true in this case.

17. According to Chief Judge Fish, "the court measures Rule 11 compliance under an objective standard of reasonableness. Consequently, '[w]here a reasonable amount of research would have revealed to the attorney that there was no legal foundation for the position taken, Rule 11 sanctions will be imposed.'" *Jordaan v. Hall*, 275 F. Supp. 2d 778, 787 (N.D. Tex. 2003) (citations omitted). Attorney's fees sanctions were awarded in *Jordaan* because the complaint "asserted claims completely foreclosed by well established law." *Id*. at 790 (citations omitted). The court held that "each and every dollar of attorney's fees incurred by the defendants in responding to this action was a dollar 'wasted.'" *Id*. at 791. Fees were especially appropriate because "[i]n this case, the defendants alerted Riley early on that the claims contained in the original complaint were legally unfounded." *Id*. (citations omitted). Under the circumstances, awarding fee reimbursement sanctions "were the least sanctions adequate to achieve the purposes of Rule 11." *Id. Accord*, *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548-49 (5th Cir. 2001); *Merriman v. Security Insurance Co. of Hartford*, 100 F.3d 1187, 1194-95 (5th Cir. 1996).

18. Finally, "[i]n considering Rule 11 sanctions, it's proper to review [counsel's]

history of litigation abuse and sanctions." *Janky v. Batistatos*, 259 F.R.D. 373, 381 (N.D. Ind. 2009) (citations omitted). In *Mick Haig Products e.K. v. Does 1-670*, No. 3:10-cv-1900-N (N.D. Tex. Dallas Div.), Judge Godbey sanctioned attorney Evan Stone $10,000 for improper issuance of subpoenas in a copyright infringement case. *Id.*, Doc. 17 (September 9, 2011) (slip op.). Judge Godbey referred to Stone's "staggering chutzpah," noting that Stone's communications were "likely about settlement." Slip op. at 12. Moreover, Judge Godbey stated: "The Court rarely has encountered a more textbook example of conduct deserving of sanctions." *Id*. In a follow-up order in the same case (Doc. 26, Jan. 24, 2012), Judge Godbey ordered Stone to pay the Ad Litems $22,000 for attorneys' fees, slip op. at 7, and held Stone in contempt. *Id*. at 10. Thus, Stone has shown a contumacious disregard for his obligations as an attorney, and his filing a claim which is absolutely barred by law in this case, and refusing to withdraw it upon notice and authority provided, is just another example of this. In fact, in Plaintiff's original complaint, statutory damages and attorney's fees were the *only* relief specified. Even now, Stone (and Plaintiff) are pursuing a case that cannot ultimately prevail because of the implied license, a defense Plaintiff knew was applicable due to the prior litigation against ACU based on the same facts, as well as still pursuing statutory damages and attorney's fees. Therefore, awarding attorneys' fees to Defendants as at least part of the sanctions is the least sanction adequate.

**WHEREFORE**, Defendants pray that the Court will require a response from Plaintiff and Mr. Stone, and upon full briefing enter such sanctions as the Court may deem appropriate, including some or all of the attorneys' fees incurred by Defendants, and such other or further relief to which Defendants may be entitled.

### CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Attorney Evan Stone on the 1st day of June, 2012, regarding this Motion. Mr. Stone stated that he is opposed to this Motion because he objects to

Motion and the relief requested.  Therefore, the matter is submitted to the Court for disposition.

/s/ Thomas F. Harkins, Jr.

Respectfully submitted,

/s/ Mack Ed Swindle
Mack Ed Swindle
State Bar No. 19587500
mswindle@whitakerchalk.com
Lead Counsel in Charge
Thomas F. Harkins, Jr.
State Bar No. 09000990
tharkins@whitakerchalk.com
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4186
Phone: (817) 878-0500
Facsimile: (817) 878-0501

Sam J. Chase
State Bar No. 04149500
chaselaw@suddenlinkmail.com
**CHASE & WALLS, PLLC**
100 Chestnut, Suite 208
P.O. Box 716
Abilene, Texas 79604
Phone: (325) 673-3745
Facsimile: (325) 676-1408

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that this document is being served on opposing counsel via certified mail, return receipt requested on this 1st day of June, 2012, pursuant to Rule 11(c)(2), Federal Rules of Civil Procedure; particularly to:  Evan Stone, 624 W. University Dr., #386, Denton, Texas 76201; and via email to: evan@wolf-stone.com.  It will be filed after 21 days should the offending Plaintiff's First Amended Complaint, including particularly the claim for statutory damages and attorney's fees, not be withdrawn.

/s/ Thomas F. Harkins, Jr.

72203-v1